## AMELDA LETENDRE *vs.* UNION STREET RAILWAY COMPANY.

Bristol.   October 22, 23, 1928. — November 28, 1928.

Present: CROSBY, PIERCE, CARROLL, & WAIT, JJ

*Practice, Civil,* Judge's charge. *Evidence,* Relevancy and materiality. *Witness,* Redirect examination.

At the trial of an action of tort against a street railway company for personal injuries received by a passenger on a street car who was thrown down when the car and a motor truck collided, there was evidence warranting a verdict for the defendant and the jury so found. Upon certain exceptions saved by the plaintiff during the trial, it was *held,* that

(1) With reference to an argument by the plaintiff's attorney that, from the fact that the defendant did not take a photograph of the street car immediately after the accident and introduced no photograph of it in evidence, but introduced in evidence a photograph of a car similar in type, the jury had a right to infer that a photograph of the car in the collision would not have corroborated the defendant's employees, the judge properly charged the jury: "There was no obligation on the defendant to have here a photograph of the car, and the failure of the defendant to do so is not evidence of liability";

(2) It was proper, after the owner of the truck, testifying in cross-examination, had made a statement on a material fact different from his statement in direct examination and further had denied that before the trial, in talking with representatives of the plaintiff, he had made a statement different from the statement testified to in direct examination, to permit him to testify in redirect examination that, after talking with the representatives of the plaintiff, he had seen a claim adjuster and the attorney for the defendant and had told them the same story as that he had told on direct examination;

(3) Upon an examination of the charge and the record, there was nothing to support a contention of the plaintiff that the judge misquoted the argument for the plaintiff and then argued against what the plaintiff contended was a reasonable construction of the evidence; nor to sustain a complaint of the plaintiff that "The charge as a whole was full of argument to refute and to answer fair argument of counsel for the plaintiff."

TORT for personal injuries. Writ dated April 18, 1922.

In the Superior Court, the action was tried before *Donahue*, J. Material evidence and exceptions saved by the plaintiff are described in the opinion. There was a verdict for the defendant. The plaintiff alleged exceptions.

*D. R. Radovsky*, (*H. W. Radovsky* with him,) for the plaintiff.

*T. F. O'Brien*, for the defendant.

PIERCE, J. This is an action of tort to recover damages for injuries sustained by the plaintiff while a passenger on the defendant street railway. After a verdict for the defendant the case is before this court on exceptions of the plaintiff to the admission of certain evidence and to the charge of the presiding judge.

On the evidence stated in the bill of exceptions, the jury would have been warranted in finding that on March 31, 1922, the plaintiff was a passenger on one of the defendant's street cars; that she signalled the car to stop; that as the car was approaching her destination she got up from her

seat for the purpose of going to the front end of the car, in the meantime holding on to the strap; that as she was holding on to the strap, suddenly the electric car collided with something; that as a result of the collision she was thrown to the floor and was seriously injured; that the car was moving north on Acushnet Avenue, in the city of New Bedford, and when one hundred forty-three feet away from the point of the accident the motorman saw an automobile truck standing alongside of the curb east of the tracks of the railway; that as the car approached the point of the accident the automobile, as if for the purpose of turning around, moved slowly in a diagonal direction towards the first set of car tracks; that when its forward wheels crossed the second rail of the first set of car tracks, going westerly, it was struck behind the left forward wheel by the electric car.

There was evidence which warranted a finding adverse to the contention of the plaintiff. They were that the curb was twelve feet from the first rail; that the car was motionless when seen by the motorman one hundred forty-three feet away; that the left side of the automobile was about four feet from the first rail; that when the motorman was alongside the driver's seat of the truck, the truck was suddenly turned toward the electric car, striking the front step of the electric car in its rear and bending the step; and that the electric car did not go more than a few feet after colliding with the truck.

The motorman testified "that from the time he first saw the automobile truck up to the time of the collision he saw no one get in the automobile truck or out of it." It was agreed "that the automobile did not have a self starter, and had to be started by cranking in front of the automobile." It is not disputed that there was no one in the automobile at the time of the collision except a helper of Drolette, the owner of the automobile.

The claim adjuster testified, in substance, that there was a report of the accident made by the employees of the defendant; that the plaintiff made claim for damages within two or three days; that he (the witness) prepares the evidence

for the trial of the defendant's cases; that he determines whether photographs of cars *et cetera* shall be taken in preparation for the trial of the case; that no photograph was taken of the particular car that was in the accident; "that he appreciated the fact that if the front step has been bent by collision with this automobile truck it would show upon a photograph in an undisputable manner, but that he did not take a photograph of this car, and that the only photograph taken was of the car which was similar in type." He further testified "that there was a custom in the equipment department if a car comes in with a broken window or small damage to it, they would go ahead and fix it up. On the other hand, if a car comes in with the sides stove in or the vestibule stove in, they call me up to see if I desire to have photographs taken or if I desire to release the car. It is not done in every instance. It is practically a custom, you might say, and not in all cases."

Without objection, the defendant "introduced in evidence a photograph of an electric car similar in type . . . for the purpose of showing the kind of car that was in the accident." In his argument to the jury the attorney for the plaintiff "commented upon the fact that the defendant presented a photograph of a similar type of car, instead of a photograph of the actual car in the collision; that if it were true that the step had been bent in the manner described by the defendant's employees, after showing that the collision had occurred by the automobile truck striking the step, instead of the electric car striking the truck, that a photograph would have shown that without any question, and that the jury have a right to draw an inference that a photograph would not have corroborated the defendant's employees, from their failure to produce a photograph." As bearing upon this argument the judge said to the jury, subject to the exceptions of the plaintiff: "Reference has been made to the failure of the defendant to have here a photograph of the car which was in the accident. There was no obligation on the defendant to have here a photograph of the car, and the failure of the defendant to do so is not evidence of liability." The exception must be overruled. There was no legal duty on

the defendant to have photographs taken, none were taken, and consequently there was no suppression of evidence or failure to introduce evidence which might prove or tend to disprove as a fact material to the issue whether the truck collided with the electric car or the car ran into and upon the truck.

Drolette, the owner of the truck, in behalf of the defendant in substance testified that he heard the crash, came out of a lunch room where he was, and found the automobile standing alongside the curb, near the electric car, "almost in the same position he had left it, but a few feet north of the place he had left it; and that the front part of the left forward mudguard was pushed down." On cross-examination he testified that it was the rear of the left forward mudguard that was pushed down. On further cross-examination he "denied that he told Mr. Harrington and Mr. Letendre that the automobile truck had been hit at the rear of the front wheel, and at the step which was behind the front wheel toward the center of the truck. He denied that the front wheels were over the first set of tracks and in front of the electric car, when he first saw it. He further testified on cross-examination that after he had talked with Mr. Letendre and Mr. Harrington, in response to a letter from Mr. Rexford he had called at the street railway office in New Bedford and talked with the claim agent, who took him to counsel for the defendant street railway company." After a colloquy with the judge, which need not be here set out in full, and subject to the plaintiff's exception, the witness on redirect examination was permitted to testify "that before he was ever summoned to testify in this case at all he went with Mr. Rexford, defendant's claim adjuster, to the office of the defendant's counsel, Mr. Bentley, and there told the same story as he told on the witness stand upon direct examination and he described in detail what he told to Mr. Bentley, which was the same as he told on the witness stand." The discussion between the attorney for the plaintiff and the judge discloses that the plaintiff contended the attitude of the witness had recently changed as the result of the influence of the defendant. And it further discloses that he

made the contention that "there is a distinction between invention . . . and a changed story as a result of the influence of the employees of the street railway." The argument against the admission of the corroborative evidence was a mere quibble on the assumed difference between a statement which is an invention and one which is a changed story. The evidence was admissible, and the exception of the plaintiff is overruled. *Commonwealth* v. *Retkovitz,* 222 Mass. 245.

The plaintiff excepted to that part of the charge where the judge stated: "My attention has been called to certain statements which by way of illustration I will to some extent refer to. It was argued by counsel for the defendant that the motorman said that no one got in the truck and it is contended that is not precisely the evidence, that the evidence was that he saw no one get in the truck and that considering the opportunities for seeing and the situation there, that makes quite a difference. If you find that is so, you should not accept as a basis of fact that the motorman in fact testified that no one got in the truck." This exception must be overruled. There is nothing in the record to support the contention of the plaintiff that the judge misquoted the argument for the plaintiff and then argued against what the plaintiff contended was a reasonable construction of the evidence. Upon full and careful reading of the charge we find nothing to sustain the complaint of the plaintiff that "The charge as a whole was full of argument to refute and to answer fair argument of counsel for the plaintiff."

As no prejudicial error is found in the conduct of the trial or in the charge, all the exceptions of the plaintiff are overruled.

*Exceptions overruled.*